198 So. 897

**STATE v. WILLIE.**

No. 35949.

Nov. 4, 1940.

Rownd & Tycer, of Hammond, for appellant.

Eugene Stanley, Atty. Gen., Niels F. Hertz, Sp. Asst. Atty. Gen., Bolivar E. Kemp, Jr., Dist. Atty., of Amite, and Joseph M. Blache, Jr., Asst. Dist. Atty., of Hammond, for the State.

LAND, Justice.

Defendant, Eastman Willie, is charged with the crime of incest, committed with his daughter in the Parish of Tangipahoa.

He was tried by jury, found guilty as charged, and sentenced to be imprisoned in the State Penitentiary at hard labor for a term of twenty years.

Defendant has appealed from the conviction and sentence pronounced against him.

Bill of Exception No. 1.

On the trial of the case, the prosecutrix, daughter of defendant, was sworn as a witness by the State, and was then shown a letter and asked to identify it. The witness identified the letter as written in her own handwriting to her mother, while she was in the Charity Hospital in the City of New Orleans. The State then offered the letter in evidence; the counsel for defendant objected to the offering, on the ground that the letter was purely a self-serving declaration on behalf of the witness. This objection was overruled by the trial judge.

Counsel for defendant then objected to the letter on the ground that correspondence between third parties cannot be binding and admissible against the defendant, who had nothing to do with the writing of the letter. This objection was also overruled by the trial judge for the following reasons stated in the per curiam to this bill:

"The letter referred to was written at the time of the commission of the crime; the prosecutrix was a daughter of the defendant and of young and tender years. They lived several miles from any town or neighbor and prosecutrix had been threatened with her life if she told what had transpired. For these reasons the letter was admitted as part of the res gestae." Tr. pp. 36 and 37.

The endorsement on the envelope in which the letter was mailed is:

"Post Marks:
New Orleans,
April 13
6 P. M.
1939.
La.
Mrs. Lucy L. Willie
Ward 363 Charity Hospital
— 1432 Magazine Street —
New Orleans, Louisiana.
Care Charity Hospital Ward 363." Tr. p. 35.

Since the indictment charges defendant with the commission of the crime on April 15, 1939, it is clear that the letter is not a self-serving declaration. It is also clear that the letter was not a part of the res gestae.

The part of the letter pertinent to the case is as follows:

"Robert, La., Sun. Eve.

"Dearest Mother:

"Tob has gone to Lydia's to-day. *He got rady* and I told him I was going to tell you and he beat me and told me he would kill me if he ever heard you mention it to him that I told you. I told him he could beat me to death, but he had better leave me along (alone), I told him I was not going to keep it hid from you. Don't worry about us I guess the kids and I will get along alright. Try not to mention to Tob that I told you or he will beat me again." Tr. p. 34.

Whether the letter was part of the res gestae or not, it was clearly admissible in evidence.

As said by the Court in State v. Nailor, 146 La. 51, 83 So. 374: "The contents of a letter written by a third person concerning accused cannot be read to the jury, being hearsay, unless the person who wrote the letter is produced to testify and to be cross-examined."

The writer of the letter in the present case was produced to testify and to be cross-examined. We find no error in the ruling.

Bill of Exception No. 2.

While the prosecutrix, daughter of defendant, was on the stand, she was handed a certain letter which had been introduced in evidence over the objection of counsel for the defendant, and was asked by the district attorney to read the letter to the jury, and explain its contents. Counsel for defendant objected: first, on the ground that the letter itself was not admissible, being purely hearsay; and, second, that the letter was the best evidence of its contents, and should not be explained to the jury by the witness. This objection was overruled by the court for the following reasons stated in the per curiam to this bill:

"The letter herein referred to contained names which were understood as having a certain meaning between the writer (the prosecutrix) and her mother, but was not understood by the father (the accused). For this reason, the letter required explanation so that the jury could fully understand just what the witness had written to her mother." Tr. p. 39.

As shown by the pertinent parts of the letter, already copied in this opinion, the writer of the letter, the daughter of defendant, referred to *"Tob"* getting *"rady,"* beating the prosecutrix and threatening to kill her, "if he ever heard you mention it to him that I told you. I told him that he could beat me to death, *but he had better leave me along* (alone). I told him I was not going to *keep it hid from you."* (Italics ours).

The jury could not have known that "Tob," referred to in the letter, was the father of the prosecuting witness; nor could the jury have known that the prosecuting witness referred to incestuous con-

nection with her by the statement in the letter that "He got rady." The ruling is correct.

### Bill of Exception No. 3.

■■ On March 27th and March 28th, 1940, defendant was tried and convicted of the crime charged in the indictment. On April 1, 1940, defendant filed a motion for a new trial, which was overruled and, on May 17, 1940, defendant was sentenced to be imprisoned in the State Penitentiary at hard labor for a term of twenty years.

Bill No. 3 was reserved to the overruling of the motion for new trial, which is based upon the following grounds:

(1) That the verdict was contrary to the law and the evidence, a ground which presents nothing for this court to review.

(2) That the letter written by the prosecutrix to her mother, Mrs. Eastman Willie, is inadmissible for the reason that the contents were purely hearsay.

(3) That the letter was further inadmissible for the reason that it is a self-serving declaration on the part of the prosecutrix.

(4) That the court erred in allowing the prosecutrix to read the letter, or parts thereof, to the jury, and to explain to the jury what the contents of the letter meant. Tr. p. 23-C.

The grounds for the motion for a new trial are mere reiterations of the objections made to the admissibility of the letter on the trial of the case by counsel for defendant, all of which have been overruled already in this opinion. The motion for new trial was properly denied by the trial judge.

### Bill of Exception No. 4.

When defendant was arraigned for sentence and sentenced to a term of twenty years' imprisonment at hard labor in the State Penitentiary, counsel for the defendant objected to the arraignment and sentence, on the ground that the trial and verdict of the jury were contrary to the law and evidence, as set out in previous bills of exceptions, and reserved this bill of exception.

### Bill of Exception No. 5.

The only other bill of exception reserved by defendant is bill No. 5, in which defendant attempted to show, in a rule taken on the district attorney and the court stenographer, that he had taken several bills of exceptions during the impaneling of the jury, when the court ruled that certain jurors were competent over the objection of the defendant.

Defendant alleges in this bill that he summoned six members of the trial jury to establish this fact, but that one of the witnesses "failed to appear for the hearing, through no fault of the said plaintiff in motion, Eastman Willie, he having used due diligence in having the subpoenaes issued to said witnesses, and, having done everything in his power to have the said witness present in Court, but the witness failed to appear. The defendant, through his counsel, requested the Court's permission to file a formal motion for a continuance, stating what he expected to prove by the witness, that he exercised due diligence, that the facts which he expected to prove by the witness could be proved by no other witness, and that, such facts were material to the issues involved. The Court overruled the motion and would not allow

counsel for the defendant to file a formal motion for the continuance based on the above stated grounds, the motion not having been prepared due to the fact that counsel for the defendant did not know the witness was absent until his name was called in Court." Tr. pp. 42 and 43. In the per curiam to this bill, the trial judge states that: "Practically the entire jury was summoned and the majority of them present in Court and testified as to what transpired; and the evidence did not show that the stenographer's notes had been changed or lost and showed every bill taken by the defendant through his counsel." Tr. p. 43.

Mrs. Gladys Thompson, who has been court stenographer for eight years, and who was placed on the witness stand on cross-examination by counsel for defendant, testified as follows:

"Q. Were you present from the beginning of that trial until the evidence closed? A. I was not.

"Q. Tell the court why you were not present throughout the trial, from beginning to end? A. Well, I was only called in when one side or the other wanted me to take a bill of exception.

"Q. You remember taking any bills of exception during the empanelling of the jury, when the court ruled that certain jurors were competent over the objection of the defendant, and exception was taken by the defendant to the ruling of the court? A. No, sir, I did not take any. I took all of the evidence of some of the jurors, but had no occasion to take a bill of exception to any of them.

"Q. Are you positive that I did not take any bill of exception to the Court overruling my objection to the competency of some of the jurors on account of being biased? A. No, you did not take any exceptions while I was reporting the qualification of the jurors—the testimony that I reported does not show where you took any exceptions to the ruling of the Court on your objections.

"Q. After I filed my motion, didn't you tell me that you had lost your notes—didn't you tell me that the testimony you took in the case of Eastman Willie had been blown away by the cyclone? A. Yes, sir; at the time I thought my notes had been blown away by the cyclone—

"Q. But that afterwards you found your notes and that they did not show that I had taken certain bills of exception? A. Yes." Tr. pp. 52 and 53.

The testimony of the jurors placed on the witness stand by defendant fails to show that any bills were taken by defendant, when the court ruled that certain jurors were competent, over the objection of defendant.

The defendant contends that he summoned six jurors. He states that five were present and one was absent. Had the absent juror been present, and had he testified that such bills were taken, his testimony would not have been accepted by the trial judge, in face of the direct and positive testimony of the competent court stenographer, whose notes had been preserved and did not show that such bills had been taken by defendant. Defendant was con-

victed on the first trial of this case on October 19, 1939, but a new trial was granted November 3, 1939. The motion for new trial was filed October 24, 1939. Tr. p. 23 A. Counsel for defendant reserved two bills of exception with reference to competency of the jurors, and these bills appear as paragraphs 2 and 3 in the motion for new trial, filed by counsel for defendant on the first trial. On the second or present trial, the court stenographer was asked by counsel for defendant:

"Q. How many exceptions did I take at the *first trial?* A. Four.

"Q. Have you any with reference to *the competency of jurors?* A. Yes.

"Q. How many? A. *Two.*" Tr. p. 53. (Italics ours).

This testimony of the court stenographer shows her accuracy in noting even the exceptions taken by counsel on the first trial. Counsel for defendant testified as follows: "The second trial of the case lasted two full days, and I am satisfied that I reserved more than two bills of exceptions, because I never went through a trial for that length of time without taking more than two bills of exceptions." Tr. p. 65.

Counsel for defendant further testified: "I exhausted all of my challenges. I believe I had challenged 12 jurors and when the 13th was up for acceptance or rejection the District Attorney called my attention to the fact that I had exhausted my challenges and we had to take that juror. *I don't remember whether I reserved a bill of exception on that or not,* but I am satis-

fied that I reserved several bills of exception that were not taken down by the stenographer, and if they were taken down, they were lost during the cyclone." Tr. p. 65. (Italics ours).

On cross-examination by the State, counsel for defendant testified as follows: "Q. On what point do you contend that you reserved more bills of exceptions—more than the stenographer's notes show? A. I reserved bills of exceptions to several members of the jury—of course some were excused by the Court on my objections, but I am satisfied that I took bills of exceptions to some of them. I exhausted all of my challenges because I thought I had sufficient bills of exceptions on the selection of the jury." Tr. p. 65. But counsel does not remember any certain objections made by him and overruled by the court. Tr. p. 66. The court stenographer testified positively that no part of her stenographic notes was lost during the cyclone, and produced all of the notes on the trial of the case, which failed to show any reservation by defendant of bills as to the competency of the jurors. The court stenographer is certain that no such bills were reserved and she is corroborated by the stenographic notes themselves.

Besides, Joe Nettles, one of the trial jury, and a witness for the defendant, testified on cross-examination by the State as follows:

"Q. On the occasions when Judge Tycer objected to some of the jurors or some of the evidence, the stenographer was called in to take the objections was she not? A. Yes, sir.

"Q. You re-call any juror being taken on the jury over Judge Tycer's objection? A. I don't think so." Tr. p. 63.

Counsel for defendant is undoubtedly sincere in his contention that bills were taken to the competency of several jurors, but the testimony in the case shows that counsel is mistaken.

The rulings of the trial judge, dismissing the rule on the district attorney and court stenographer, and also in refusing to permit defendant to file an application for continuance, are correct. Bill of exception No. 4, reserved to the arraignment for sentence and to the sentence of the accused, is without merit, as it is predicated upon the ground that the trial and verdict of the jury are contrary to the law and the evidence, as set out in previous bills of exceptions, which have been overruled. The conviction and sentence appealed from by defendant are affirmed.

FOURNET, J., absent.